# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BRUCE A. ARBIT and
MARK WINTERS,

      Plaintiffs,

v.                              Case No: 8:11-cv-2020-T-30TBM

ANDREW MAKRIDES, et al.,

      Defendants.

_____

## <u>ORDER ON MOTION TO DISMISS</u>

THIS CAUSE comes before the Court upon Defendants', Andrew Makrides, J. Robert Saron, George W. Kromer, Michael G. Norman, August Lentricchia, Steven MacLaren, Gregory Alan Konesky, Moshe Citronowicz, Peter Pardoll, and Nominal Defendant Bovie Medical Corporation's, Motion to Dismiss the Complaint (Dkt. 51), Plaintiffs' response thereto (Dkt. 58), and Defendants' Reply (Dkt. 66). The Court having considered the motion and memoranda of law submitted by the parties, and being otherwise fully advised, concludes the Motion to Dismiss should be denied.

## BACKGROUND

The following facts are drawn from the allegations of the Amended Complaint (Dkt. #42), which the Court accepts as true for the purpose of this motion only.

Plaintiffs, two shareholders of Bovie Medical Corp., are suing ten of Bovie's current and former officers and directors. Bovie is a public company that designs and

sells electrosurgical devices and medical lights. The company is incorporated in Delaware and does business in Clearwater.

Defendants Andrew Makrides, Robert Saron, and George Kromer are inside directors. Makrides is CEO and Chairman of the Board. Saron is the president and chief sales and marketing officer and a director. Kromer is a research analyst and a director. Defendants Michael Norman and August Lentricchia were outside directors. Although Defendants Steven MacLaren and Gregory Konesky were labeled as outside directors, MacLaren and Konesky had consulting contracts with Bovie and were paid by the Company as consultants. Defendant Peter Pardoll was a director, but he retired before the suit was filed. Defendants Moshe Citronowicz and Leonard Keen were the company's COO and General Counsel, respectively, but did not serve on the board.

Plaintiffs raise three legal claims. Count I alleges breach of fiduciary duty against all Defendants. Count II alleges breach of contract against Defendants Makrides and Saron. Count III seeks injunctive relief. Plaintiffs' claims generally stem from three prior lawsuits in which Bovie was involved.

In 2008, ERBE USA, Inc. sued Bovie for aiding and abetting a breach of a confidentiality agreement that protected ERBE's confidential marketing information. That year, Bovie hired James Muehleisen, then a salesperson at ERBE. Before leaving ERBE, Muehleisen downloaded trade secrets, including proprietary marketing information about Argon Plasma Coagulation products, in violation of a confidentiality clause in his employment agreement. ERBE sent a cease-and-desist letter to Muehleisen

2

and Makrides, warning them not to use any of the confidential information. Shortly after Keen responded to the letter on behalf of Bovie, Bovie announced that it had recently launched the marketing of "Canady Argon Plasma Coagulations." Following the announcement, ERBE commenced a lawsuit alleging that Bovie intentionally and improperly solicited ERBE's proprietary argon plasma probes sales information from Muehleisen. After a year of litigation, a settlement was reached. The settlement required, among other things, that Bovie pay $160,000 in damages and forego using any of the information obtained from Muehleisen.

Also in 2008, Bovie purchased SEER technology from Boston Scientific Corp. Prior to the purchase of SEER, Citronowicz, Keen, and a Bovie salesperson named Rick Pfahl allegedly performed due diligence. However, Steve Livneh, a design engineer, reviewed that patents and saw that the SEER technology infringed on the existing patents of Salient and Medtronics. Livneh informed Citronowicz, Keen, and Pfahl about the patent infringement. Livneh also obtained a second opinion from engineer Fred Baron, who confirmed that the technology had no real value. Still, no one consulted with a qualified patent attorney regarding the concerns of Livneh and Baron. After Bovie purchased the SEER technology, Salient and Medtronics filed an action against Bovie alleging that the use and sale of SEER infringed on their respective patents. Shortly after the complaint was filed, a settlement was reached. The settlement required Bovie to exit the market for the SEER technology and not enter it until February 2015, in exchange for only $750,000 to Bovie.

In 2006, Bovie entered into an agreement with Steve Livneh and his companies, Henvil and Lican, to develop and market two new products. One product, the MEG, required that Bovie take actions either to have Bovie Canada qualify to manufacture it or to have it assembled in another properly outfitted facility. Another technology, the Seal-n-Cut, required development of a generator to power it.

Although Livneh made repeated requests, Bovie failed to take the necessary steps to get Bovie Canada qualified to manufacture the MEG in accordance with FDA regulations. Despite being ready for manufacture in 2008, Bovie could not seek the required ISO certification from the FDA without exposing itself to a potential FDA audit of Bovie Canada. Instead, Bovie transferred the product to Bovie's Florida location, notwithstanding that the Florida facility was not equipped to take on the task. As a result, Bovie was forced to withdraw from the MEG market. However, the Board did not take any internal action or conduct an investigation. The Board closed Bovie Canada completely, allegedly only agreeing to do so after they received re-priced stock options.

Bovie was also unable to develop the Seal-n-Cut technology. Bovie could not produce a working generator to interface with the Seal-n-Cut, despite Bovie's purported strength of producing reliable and technologically advanced generators for medical instruments. Demonstrations of the product to potential investors failed because of problems with the generators. Makrides, Saron, Pardoll, and MacLaren, at a minimum, were aware of problems with the development of a new generator through, among other things, communications with Livneh and Arik Zoran, the head of the Research and

Development department. However, there were no steps taken to investigate the issues and the Engineering Department continued to miss successive deadlines to produce a working generator for the Seal-n-Cut, leading to repeated failures in demonstrations of the technology.

With Bovie's inability to produce a working generator, the Defendants determined to sell Bovie. The Board initially decided to look into selling Bovie Canada and then determined that Livneh should look into a sale of the entire Company. The Board did not hire an investment banker to value the Company, but instead asked Keen, a long-term consultant and patent attorney, to perform a valuation. Keen lacked qualifications to properly value the Company and he failed to perform a valuation of the entire Company. Although Livneh found companies that were interested in purchasing Bovie, demonstrations of the Seal-n-Cut technology failed and the potential purchasers lost interest. Allegedly, the potential deals fell apart because the Defendants failed to take steps to fix the generator problems and to properly prepare for and shop Bovie.

In early 2009 Livneh began a letter writing campaign to induce Makrides and Citronowicz to take steps to fix the generator. In response to one email, Citronowicz told Livneh he would take the concerns to the Board. Soon after a March 26, 2009 Board meeting during which Citronowicz spoke to the Board, Livneh was asked to leave the Board. The Board took no steps to investigate the issues Livneh had complained about.

In 2010 the Board authorized Bovie to commence litigation against Livneh. Livneh later filed a counter-complaint. After over one and a half years of litigation, a

settlement was reached requiring Bovie to pay almost $1 million and to forego the intellectual property rights to the MEG and the ability to market the Seal-n-Cut in China.

Defendants' present Motion to Dismiss argues that Plaintiffs have failed to properly allege in their Amended Complaint either that a demand was made on Bovie's Board to initiate this lawsuit on behalf of the Corporation or the reasons excusing the demand.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 23.1(b)(3), a derivative complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors […]; and (B) the reasons for not obtaining the action or not making the effort." While Rule 23.1 provides that the facts concerning a shareholder demand should be pleaded with particularity, the law of the state of incorporation governs the substantive obligations imposed by the demand requirement. *Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994). Because Bovie is a Delaware corporation, Delaware law determines the adequacy of the pleading.

Under Delaware law, a plaintiff must allege specific facts establishing that a majority of the Board cannot properly exercise its business judgment to proceed with the claim. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Demand will be excused when the particularized facts alleged create a reasonable doubt that a majority of the directors are disinterested and independent. *Id.* A director is interested when "he or she will receive a personal financial benefit from a transaction that is not equally shared by the

stockholders," or when "a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). Directors lack independence when they are "beholden" to an interested director or so under the influence of an interested director "that their discretion would be sterilized." *Id.*

Here, the initial complaint was filed on September 6, 2011. On that date, the Board consisted of nine directors, seven of whom are named defendants in this case. Plaintiff need only show that five of the nine directors were interested or lacked independence in order to plead demand futility.

## DISCUSSION

The plaintiffs have alleged sufficient particularized factual allegations establishing a reasonable doubt that a majority of the directors are disinterested. A director who faces a substantial likelihood of personal liability is not disinterested and is unable to consider a demand impartially. *Rales*, 634 A.2d at 936. When the corporate charter includes an exculpatory provision, a substantial likelihood of personal liability requires that the plaintiffs plead a non-exculpated claim against the directors. *See Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 502 (Del. Ch. 2003); *In re Baxter Int'l*, 654 A.2d 1268 (Del. Ch. 1995). Here, Plaintiffs' claims, as pled, fall outside the exculpatory provision because they allege, among other things, that Defendants breached their fiduciary duty by failing to take corrective action in response to obvious signs of wrongdoing. *See In re SFBC Int'l, Inc. Sec & Derivative Litig.*, 495 F. Supp. 2d 477, 487 (D.N.J. 2007).

7

According to the allegations in the Amended Complaint, the Defendant board members failed to respond to red flags. For example, even after receiving a cease-and-desist letter from ERBE the Bovie Board made public announcements about developments that were based on the information Muehleisen copied from ERBE. The Board approved the purchase of the SEER technology without any investigation into the patent infringement concerns raised by Livneh and Baron. And, the Board failed to investigate the difficulties of the MEG and Seal-n-Cut development processes.

The development of the MEG required an adequate facility that met FDA approval, which Bovie failed to provide. There were no steps taken to ensure that FDA approval was obtained for the Bovie Canada facility or that the Florida facility would be satisfactory for manufacture of the MEG. Despite Livneh's concerns and requests, the Board moved the development of the MEG to the inadequate Florida facility after failing to take any steps to meet the FDA requirements for the Canada facility. Even after Bovie was forced to withdraw from the MEG market, the Board failed to investigate the issues.

In addition, the Seal-n-Cut needed a working generator, but Bovie was unable to produce one. There were multiple failed demonstrations of the Seal-n-Cut technology and an inability to develop a new generator. Livneh complained about the difficulties with the Seal-n-Cut and the Company lost opportunities to sell itself due to failed demonstrations of the product. The Board still failed to examine the problems with the development of the Seal-n-Cut.

The Board's repeated failures to take any corrective action in these situations allegedly resulted in various lawsuits and losses to the company. Based on these allegations and the likelihood of personal liability, there is reasonable doubt that the seven Defendant-directors are disinterested and able to consider a demand impartially.

Because there is a reasonable doubt that a majority of the Board is disinterested, there is no need for this Court to consider the directors' independence. *See In re SFBC*, 495 F. Supp. 2d at 484.

Plaintiffs have met the requirement to show that demand would be futile. Plaintiffs have shown that a majority of the directors face a sufficient likelihood of liability so that their own self-interest would prevent them from objectively considering a demand upon the Board. As such, demand is excused, and Defendants' Motion must be denied.

## CONCLUSION

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants' Motion to Dismiss the Complaint (Dkt #51) is DENIED.

2.    Defendants shall file an Answer to the Plaintiffs' Amended Complaint (Dkt. #42), within 14 days of the date of this Order.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2011\11-cv-2020 mtd 51.doc